# IN THE UNITED STATES DISTRICT COURT FOR
# THE SOUTHERN DISTRICT OF WEST VIRGINIA

## HUNTINGTON DIVISION

BRETON L. MORGAN, M.D., INC. and
BRETON L. MORGAN, M.D.,

               Plaintiffs,

v.                                                CIVIL ACTION NO. 3:19-0406

ALEX M. AZAR, Secretary of Department
of Health and Human Services,

               Defendant.

## MEMORANDUM OPINION AND ORDER

Presently pending before the Court is an appeal seeking reversal of the Department of Health and Human Services Departmental Appeals Board's Final Decision, *Breton L. Morgan, M.D., Inc. and Breton L. Morgan, M.D.*, DAB No. 2933 (2019) (hereinafter "Final Decision"), to revoke Plaintiff Breton L. Morgan's Medicare billing privileges. *See Am. Compl.*, ECF No. 10. Also pending is Plaintiffs' motion to refer the instant case to mediation. *Mot. to Refer*, ECF No. 15. For the reasons set forth herein, the Court **DENIES AS MOOT** Plaintiffs' motion, **REVERSES** and **VACATES** the Secretary's Final Decision, **ORDERS** the immediate reinstatement of Plaintiffs' Medicare enrollment and billing privileges, **ORDERS** Defendant to direct CMS to accept for processing and payment all billings for Plaintiffs' Medicare patients from December 7, 2016 to the present, and **DISMISSESS** this matter from the Court's docket. The Court **HOLDS IN ABEYANCE** Plaintiffs' request for costs and attorney's fees pending submission of an application for those fees and any other expenses.

# I. BACKGROUND

Few federal programs impact the lives of most Americans—and the lives of the doctors who treat them—as does Medicare. Established in 1966, Medicare provides health insurance benefits to individuals over sixty-five or to those who are disabled or have been diagnosed with an end-stage renal disease. 42 U.S.C. § 1395c. In particular, Part B of the Medicare program is responsible for paying physicians and other health care providers for the medical services they render to Medicare-insured patients. Congress tasked the United States Department of Health and Human Services ("HHS")—and, in turn, the Centers for Medicare and Medicaid Services ("CMS")—with administering Medicare, and granted HHS the broad authority to promulgate necessary regulations related to the program. *See* 42 U.S.C. § 1302(a) ("The Secretary shall prescribe such regulations as may be necessary to carry out the administration of the insurance programs under this subchapter.").

Pursuant to these regulations, "provider[s] or supplier[s] must be enrolled in the Medicare program" and obtain billing privileges to receive payments for their services.[1] 42 C.F.R. § 424.500–505. To enroll, medical professionals must complete Form CMS-855I—the "Medicare Enrollment Application for Physicians and Non-Physician Practitioners." *See* Form CMS-855I, *available at* https://www.cms.gov/Medicare/CMS-Forms/CMS-Forms/Downloads/cms855i.pdf (last visited Jan. 14, 2020).[2] Applicants are required to list all "final adverse actions" against them, "such as convictions, exclusions, revocations, and suspensions." *Admin. R.*, ECF No. 5-1, at 292–

---

[1] Confusing though the terminology may be, physicians are considered "suppliers" while "providers" are limited to hospitals and other medical facilities. 42 C.F.R. § 400.202.

[2] This current form has been modified from the form used in 2013, which is filed as part of the record. *Admin. R.*, ECF No. 5-1, at 280–313.

93. The form also requires applicants to furnish "complete, accurate, and truthful responses to all information requested." 42 C.F.R. § 424.510(d)(2)(i).

Once attainted, a physician's enrollment and billing privileges are not permanent. To maintain both, he or she "must resubmit and recertify the accuracy of [one's] enrollment information every 5 years." 42 C.F.R. § 424.515. Pertinent to this case, CMS also possesses relatively wide authority to revoke a provider's enrollment in Medicare for, *inter alia*, providing "[f]alse or misleading information" to the agency. 42 C.F.R. § 424.535(a)(4).

It is a dispute over precisely what constitutes such a false or misleading statement that has led to this appeal. Plaintiff Breton L. Morgan, M.D., is a physician operating his own practice in Point Pleasant, West Virginia. *Am. Compl.*, at ¶ 7. After a back surgery in 1999, Morgan became dependent on narcotic painkillers and began siphoning samples of opioids from his practice for personal use. *Id.* at ¶ 8; *Pls.' Br.*, ECF No. 14, at 3. Morgan overcame his addiction in 2006, successfully completing a fourteen-week residential drug rehabilitation program. *Pls.' Br.*, at 3. Though he has remained sober since that point, Morgan pled guilty to Obtaining a Schedule III Controlled Substance by Fraud in violation of 21 U.S.C § 843(a)(3) on December 11, 2006. *United States v. Morgan*, No. 3:06-00194, ECF No. 18 (S.D.W. Va. Oct. 27, 2006). Three months later, this Court sentenced Morgan to thirty days of imprisonment, ninety days of home confinement, and a $5,000 fine. *United States v. Morgan*, No. 3:06-00194, ECF No. 3 (S.D.W. Va. Mar. 14, 2007).

Of course, consequences stemming from Morgan's conviction extended well beyond the sentence this Court imposed. Morgan surrendered his West Virginia and Ohio medical licenses, as well as his DEA license. *Pls.' Br.*, at 3. While his DEA license was returned with a Schedule II restriction in 2009, his state licenses were not restored in full until 2013. *Am. Compl.*, at ¶¶ 9–10.

A final consequence of Morgan's felony conviction was his mandatory five-year exclusion from federal health care programs in 2008 by the HHS Office of Inspector General ("OIG"). *Admin. R.*, at 268–67. CMS revoked Morgan's Medicare billing privileges around the same time, and imposed a three-year re-enrollment bar. *Id.* at 270–71. By the close of his five-year exclusion in the summer of 2013, Morgan's medical licenses had been restored and the OIG indicated that he was free to re-apply for Medicare billing privileges. *See id.* at 279. He did so on July 19, 2013, submitting the necessary CMS-855I form to Palmetto GBA ("Palmetto")—the regional Medicare Administrative Contractor ("MAC")—for consideration.[3] *See id.* at 280–313.

It is this CMS-855I form that lies at the heart of the instant case. At the time, the form was thirty-one pages long and requested a plethora of personal and professional information from potential suppliers. *Id.* Section Three of the application sought to "capture[] information on final adverse legal actions, such as convictions, exclusions, revocations, and suspensions." *Id.* at 292. The form mandated that "[a]ll applicable final adverse actions must be reported, regardless of whether any records were expunged or any appeals are pending." *Id.* The next page of the form provides a small table for applicants to list the details of any such actions. *Id.* at 293. The form instructs applicants to "report each final adverse legal action, when it occurred, the Federal or State agency or the court/administrative body that imposed the action, and the resolution, if any." *Id.* The page is devoid of any other instructions regarding the table. *See id.*

On his form, Morgan provided "Medicare Exclusion" as a final adverse legal action entered against him and a date of May 30, 2008. *Id.* He also indicated that Medicare was responsible for taking the action, and that it had been resolved on June 19, 2013. *Id.* Spilling out of the extremely

---

[3] CMS contracts with various Medicare Administrative Contractors ("MACs") in regions across the country to ensure compliance with regulatory provisions.

limited space in which to provide information, he advised the reviewer to "see release from Office of Inspector General attached." *Id.* Before the next page of the form, Morgan inserted a copy of the OIG letter advising him that his exclusion from Medicare had ended. *Id.* at 294. The letter included a reference to "File No. 3-05-10116-9," as well as advice to "use this letter to demonstrate that your right to participate in the Federal health care programs has thus been reinstated until your name is removed from the" List of Excluded Individuals/Entities. *Id.* As a reinstatement letter, it also referenced the fact that Morgan's "request for the reinstatement of [his] eligibility to participate as a provider of items and services covered by the title XVIII (Medicare) program has been approved." *Id.* Morgan went on to repeatedly and prominently mention his exclusion throughout the rest of his application; indeed, "Exclusion Lifted 06-19-2013" is written in large print on the cover of the form. *Id.* at 280, 284, 292, 293, 295, 302. He also included three copies of his reinstatement letter throughout the form. *Id.* at 294, 296, 303. At no point, however, did he explicitly note the felony that had prompted his exclusion.

As noted earlier, Morgan submitted his CMS-855I form to Palmetto on July 19, 2013. *Id.* at 280. On October 8, 2013, Palmetto informed Morgan that his application for Medicare billing privileges had been approved. *Id.* at 314–15. Morgan subsequently resumed his practice, but his brief respite from CMS-related entanglements came to an abrupt end just three years later. On March 22, 2016, Palmetto informed Morgan that his Medicare billing privileges were being revoked pursuant to 42 C.F.R. § 424.535(a)(3) and 42 C.F.R. § 424.535(a)(9)—for commission of a felony and failing to report the same, respectively—and that he would be barred from re-enrolling in Medicare for three years. *Id.* at 328–29. It is unclear from the record why Palmetto's initial revocation decision was based on Morgan's felony conviction, which had already been the basis of his 2008 exclusion. Nevertheless, upon learning of his earlier exclusion Palmetto revised its

reasoning and based its revocation decision on 42 C.F.R. § 424.535(a)(4), which bars suppliers from providing "false or misleading" information in an application. *Id.* at 344–45.

What followed is a series of three agency decisions, all of which rest on substantially similar reasoning. Morgan first requested reconsideration of Palmetto's decision by CMS. The CMS Hearing Officer who reviewed Morgan's request reasoned that his failure to disclose his felony conviction was false or misleading because he had "certified as true that the only final adverse action imposed against him was his exclusion form all federal health care programs by OIG in 2008." *Id.* at 335. Morgan then timely filed a request for review by an Administrative Law Judge ("ALJ"). Both Morgan and CMS filed motions for summary judgment, with the ALJ reasoning that "the narrow issue before me is whether CMS has a basis to revoke Petitioners' Medicare enrollment and billing privileges." *Id.* at 3. The ALJ rejected Morgan's argument that providing information about his exclusion was sufficient to place CMS on notice of his felony conviction, reasoning that "Petitioners had an affirmative duty under the regulations, of which they were advised by the CMS-855I, to submit a true, complete, and accurate application. Petitioners violated that affirmative duty." *Id.* at 10–11. As Morgan's application was "incomplete, false, and misleading," the ALJ granted summary judgment in favor of CMS. *See id.* at 10.

Morgan's final appeal before seeking relief in this Court took him to the HHS Departmental Review Board ("DAB"), which affirmed the ALJ's judgment in a decision issued on March 26, 2019. *Id.* at 13–27. A three-member panel reasoned that the "plain terms of the application required that Petitioners report Dr. Morgan's 2007 conviction as a final adverse legal action," and that his failure to do so authorized CMS to revoke his enrollment and billing privileges. *Id.* at 20–21. The DAB placed special emphasis on the form's certification statement, which affirmed that the information contained in his application was "true, correct, and *complete.*" *Id.* at 21 (emphasis in

original). In the DAB's view, Morgan's failure to list his felony conviction thus rendered his application incomplete. *Id.* The DAB further concluded that there was "no significance in the possibility that this is a case of first impression with respect to specific facts," responding to Morgan's argument that he had been transparent in disclosing his exclusion and the file number related to his felony conviction. *Id.* at 25.

Not satisfied with the DAB's reasoning, Morgan filed a Complaint for Review of the DAB's decision in this court on May 24, 2019. *See Compl.*, ECF No. 1. Morgan filed an Amended Complaint on August 21, 2019, and the Court issued an order establishing a briefing schedule on August 30, 2019. *Order*, ECF No. 12, at 1. The relevant issues have since been ably briefed by both parties, and so the Court dispenses with the need for oral argument and proceeds to a review of the instant case.

## II. STANDARD OF REVIEW

Several layers of legal standards govern this Court's review of the DAB's decision. At the outset, the Court notes that Plaintiffs bring this appeal pursuant to 42 U.S.C. § 405(g), which authorizes judicial review of final decisions by the Secretary of Health and Human Services ("Secretary").[4] "Congress has delegated general rulemaking authority with respect to Medicare to the Secretary, who in turn has delegated that authority to CMS." *Hardy Wilson Mem'l Hosp. v. Sebelius*, 616 F.3d 449, 457 (5th Cir. 2010). The Court's "review of the Secretary's final decision in this case . . . is to be based solely on the administrative record, and the Secretary's findings of fact, if supported by substantial evidence, shall be conclusive." *MacKenzie Med. Supply, Inc. v.*

---

[4] Technically speaking, the statute governs review of decisions by the Commissioner of Social Security. *See* 42 U.S.C. § 405(g). Nevertheless, "exclusions from participation in federal health care programs are subject to the same judicial review as decisions regarding social security benefits." *Aswad v. Hargan*, No. 2:6-CV-1367, 2018 WL 704370, at *2 (D.N.M. Feb. 2, 2018) (citing 42 U.S.C. § 1320a-7(f)(1)).

*Leavitt*, 506 F.3d 341, 346 (4th Cir. 2007). This is not a standard that affords courts freewheeling discretion; indeed, substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotations omitted). Put differently, the "duty to resolve conflicts in the evidence rests with the [Secretary], not with a reviewing court." *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996).

The Administrative Procedure Act ("APA") provides a similar, and perhaps more analytically natural, standard for considering the issues presently in dispute—specifically, that "agency action, findings, and conclusions" will be set aside only if they are "found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."[5] 5 U.S.C. § 706(2). "This is, of course, a highly deferential standard which presumes the validity of the agency's action." *Natural Res. Def. Council, Inc. v. EPA*, 16 F.3d 1395, 1400 (4th Cir. 1993). Nevertheless, "[t]he 'arbitrary and capricious' standard is not meant to reduce judicial review to a 'rubber-stamp' of agency action." *Ohio Valley Envtl. Coal. v. Aracoma Coal Co.*, 556 F.3d 177, 192 (4th Cir. 2009). Instead, courts must engage in a "searching and careful" consideration of the record. *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971). Reviewing courts should consider whether an agency has "entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of

---

[5] As more than one court has noted, "[t]he APA's 'substantial evidence' and 'arbitrary and capricious' standard connotes the same substantive standard." *Bangor Hyrdo-Elec. Co. v. F.E.R.C.*, 78 F.3d 659, 663 n. 3 (D.C. Cir. 1996). Nevertheless, "the term 'arbitrary and capricious' more naturally fits a determination of a mixed question of factfinding and policy implementation." *Id.*

agency expertise." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 462 U.S. 29, 43 (1983).

As a final matter, the Government argues that the Court owes deference to the DAB's decision under *Chevron U.S.A. Inc. v. Natural Resources Defense Council*, 467 U.S. 837, 843–45 (1984), "to the extent HHS based its decision on the language of the Medicare Act itself." *Def.'s Br.*, ECF No. 16, at 10. Why this would be the case is unclear, as nothing about this matter implicates the Secretary's interpretation of the Medicare statute.[6]

### III. DISCUSSION

Plaintiffs advance two principal arguments in favor of reversing the DAB's decision to affirm the ALJ's grant of summary judgment: first, that "the ALJ mistakenly concluded that no genuine issue of material facts remained," and second, that "Morgan's repeated disclosure of his exclusion from Medicare arising out of his felony conviction was [not] 'false and misleading.'" *Pls.' Br.*, at 8–9. The Court need not address Plaintiffs' first contention because it agrees with their second.

As a preliminary matter, it is worth clarifying what matters are *not* in dispute on this appeal. First, it is clear that CMS possesses the authority to revoke an application that is actually false or misleading pursuant to 42 C.F.R. § 424.535(a)(4). Plaintiffs concede as much, referencing several relevant DAB decisions that make this point. *See, e.g.*, *Sandra E. Johnson*, *CRNA*, DAB No. 2708, at 3–4 (2016); *Mark Koch, D.O.*, DAB No. 2610, at 2–3 (2014). Relevant federal case law supports this conclusion as well. *See, e.g.*, *McGinty v. Azar*, No. 3:18-cv-359-S, 2019 WL 3044183, at *6

---

[6] Any confusion likely stems from the fact that the Government's proposed standard of review is drawn without alteration from the District of Maryland's decision in *Almy v. Sebelius*, 749 F. Supp. 2d 315, 322–25 (D. Md. 2010), which addressed a distinct set of legal and factual issues.

(N.D. Tex. May 15, 2019). Also undisputed is that Morgan's 2007 felony conviction is a "final adverse legal action" within the meaning of 42 C.F.R. § 424.502. In particular, 42 C.F.R. § 424.535(a)(3)(i) defines felonies that fall within the ambit of "final adverse legal actions" as any felony "that CMS determines is detrimental to the best interests of the Medicare program and its beneficiaries," including "[a]ny felonies that would result in mandatory exclusion under section 1128(a) of the [Social Security] Act." As this Court held nearly ten years ago, Morgan was convicted of a felony conviction consisting of "fraud" within the plain meaning of section 1128(a)(3) of the Social Security Act. *Morgan v. Sebelius*, No. 3:09-1059, 2010 WL 3702608, at *2 (S.D.W. Va. Sept. 15, 2010) (Chambers, J.). As such, Morgan was required to advise CMS of his felony conviction as part of his application.

One further layer of factual agreement between the parties informs the Court's analysis. Under 42 C.F.R. § 424.510(d)(2)(i), suppliers submitting applications for Medicare billing privileges must furnish "[c]omplete, accurate, and truthful responses to all information requested within each section as applicable to the provider or supplier type." Pursuant to this requirement, "Morgan signed the certification statement on the application on July 17, 2013, certifying that the information contained in [his] application was 'true, correct, and complete.'" *Admin R.*, at 21. Of course, the parties disagree whether Morgan's failure to include explicit reference to his felony conviction in his application renders it "incomplete." Resolution of this issue is critical, as it is the purportedly incomplete nature of Morgan's application that renders it "false or misleading" within the meaning of 42 C.F.R. § 424.535(a)(4).

The question before this Court is therefore quite narrow: whether the ALJ's conclusion that Morgan's application was incomplete—and therefore "false or misleading"—is based on substantial evidence, or represents an arbitrary and capricious decision in itself. To answer this

question, the Court begins by outlining the reasoning the DAB employed in upholding the ALJ's decision. First, the DAB concluded that Plaintiffs "were required to report Dr. Morgan's 2007 felony conviction on their 2013 Medicare enrollment application." *Admin R.*, at 19. As noted *supra*, this much is undisputed. Plaintiffs, however, contend that the repeated references to Dr. Morgan's exclusion provided information about his underlying felony conviction to "[a]ny reasonable reviewer." *Pls.' Br.*, at 10. In discounting this argument, the DAB drew heavily upon the CMS-855I form's requirement that "[a]ll applicable final adverse actions must be reported." *Admin. R.*, at 19–20. Based on this language, the DAB reasoned that that "[t]he plain terms of the application required that [Plaintiffs] report Dr. Morgan's 2007 conviction as a final adverse legal action." *Id*.

The Court does not agree that the "plain terms" of the application are as clear as the DAB believes them to be. The disclosure section for final adverse legal actions contains two components: first, a space for applicants to list whether they have any final adverse legal actions to report, and second, a condensed table in which they are expected to list reportable events. Yet as Plaintiffs point out, "[t]here is no guidance for physicians who seek to report an issue that might fit multiple categories or which had several outcomes." *Pls.' Br.*, at 10. Here, Morgan's felony conviction resulted in several distinct consequences: imprisonment, a term of supervised release, a fine, a special assessment, the loss of his Ohio medical license, the loss of his West Virginia medical license, the loss of his DEA medical license, and his exclusion from the Medicare program. The DAB's decision suggests that each of these results—if reportable as a final adverse legal action pursuant to 42 C.F.R. § 424.502—should be listed separately on the CMS-855I, and that to do otherwise contravenes the "plain terms" of the application. Yet the application is silent on how a supplier should detail the potentially manifold consequences that may stem from a

common nucleus of facts. To read this language as an unambiguous command to separately report adverse actions—even when they stem from the same set of operative facts—is to impute clarity to language that contains none.

With this background in mind, the Court turns to the DAB's conclusion that Morgan's application was "false or misleading." In making its determination, the DAB noted that Morgan "signed the certification statement on the application on July 17, 2013, certifying that the information contained in the application was 'true, correct, and complete[,]" as required by 42 C.F.R. § 424.510(d)(2)(i). *Admin. R.*, at 21. As Morgan failed to make separate note of the felony conviction upon which his exclusion was based, the DAB affirmed the ALJ's conclusion that Morgan's application was incomplete and therefore false or misleading. This Court disagrees. A thorough review of Plaintiffs' application demonstrates Morgan's repeated disclosure of his exclusion from Medicare, along with his reinstatement letter. The fact of Morgan's OIG exclusion would immediately have informed any reviewer charged with parsing his application that wrongful conduct had occurred. If Morgan's goal had been to mislead CMS and direct them away from his felony conviction, he did an astonishingly poor job of it. In fact, the OIG reference number that is listed prominently at the top of the reinstatement letter would have provided a convenient method for researching the exact conduct that led to Morgan's exclusion.

Nearly as significant to the Court is that CMS was aware of Morgan's felonious conduct even apart from his reporting the OIG exclusion and reinstatement on his application. Indeed, CMS used this very conduct as the basis for *its own* 2008 revocation of Morgan's billing privileges. *Id.* at 272–73. The Government's position thus strikes the Court as equal parts baffling and disconcerting. It would be irrational to conclude that failure to report the details of a criminal conviction to an agency that is already aware of that criminal conviction—and has acted upon it—

is somehow false or misleading. In any event, the instant case is not even this close. Morgan's repeated references to his Medicare exclusion are more than sufficient to report "all applicable final adverse actions" as required by the CMS-855I instructions. To hold otherwise would be arbitrary and capricious, and certainly not based on substantial evidence.

The Court notes that the Government has pointed to prior DAB decisions affirming the revocation of Medicare billing privileges as evidence of the strength of its position. *See, e.g., Def.'s Br.,* at 14. Yet as Plaintiffs argue, each of these cases involved applicants' clear-cut failures to disclose prior final adverse legal actions, either intentionally or inadvertently. The DAB views this as distinction without a difference, reasoning that there exists "no significance in the possibility that this is a case of first impression with respect to the specific facts" of this case. *Admin. R.*, at 25. To the contrary, the specific facts of this case make clear that Morgan submitted a complete application to CMS. The fact that the particular cases cited by the Government involve the DAB upholding revocations based on the failure to report final adverse legal actions only bolsters this conclusion.

The Government also cites to several federal cases, none of which are instructive here. *McGinty v. Azar*, No. 3:18-cv-359-S, 2019 WL 3044183 (N.D. Tex. May 15, 2019), involved a physical therapist who did not report a deferred adjudication on his CMS-855I application. *Foo v. Azar*, No. 18-00490-JAO-WRP, 2019 WL 2600218 (D. Haw. Sept. 23, 2019), concerned an anesthesiologist who submitted a private mailbox as his practice location on his application. The common thread in both these cases is that the respective plaintiffs actually submitted false or misleading information to CMS—in *McGinty* by failing to provide information about a deferred adjudication, and in *Foo* by providing a false address.[7] *McGinty*, 2019 WL 3044183, at *8; *Foo*,

---

[7] CMS's revocation of Dr. Foo's billing privileges was specifically based on 42 C.F.R.

2019 WL 2600218, at *4. The final case the Government cites is *Ahmed v. Sebelius*, 710 F. Supp. 2d 167 (D. Mass. 2010), which concerned CMS's revocation of a dermatologist's billing privileges based on his felony conviction and does not implicate an incomplete application to CMS at all.

In sum, this Court well understands the deference owed to administrative agencies as they adjudicate the countless complex cases before them. Yet the judiciary's role is not so limited that it may act merely as a rubber stamp for agency decisions, and this Court will not affirm an agency's actions where they are plainly arbitrary and capricious. CMS has a vital interest in ensuring that suppliers adhere to its rules and regulations in applying for Medicare billing privileges, but that interest does not warrant the wholesale embrace of form over substance that is evident in both decisions below. In completing his application, Dr. Morgan repeatedly reported his OIG exclusion—the very adverse action based on his felony conviction. This renders his application complete, and therefore neither false nor misleading. Substantial evidence simply does not support the Secretary's Final Decision, which this Court now reverses.

## IV. CONCLUSION

For the reasons set forth above, the Court **REVERSES** and **VACATES** the Secretary's Final Decision. The Court **ORDERS** the immediate reinstatement of Plaintiffs' Medicare enrollment and billing privileges, and also **ORDERS** Defendant to direct CMS to accept all billings for Plaintiffs' Medicare patients from December 7, 2016 to the present for processing and payment. The Court **HOLDS IN ABEYANCE** Plaintiffs' request for costs and attorney's fees pending submission of an application for those fees and any other expenses. Finally, the Court

---

§ 424.535(a)(5), which concerns the on-site inspection of practice locations. *Foo*, 2019 WL 2600218, at *2.

**DENIES AS MOOT** Plaintiffs' motion to refer this case to mediation, ECF No. 15, and **DISMISSES** this matter from its docket.

The Court **DIRECTS** the Clerk to forward copies of this written opinion and order to all counsel of record and any unrepresented parties.

ENTER: January 16, 2020

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE