IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

**HUNTINGTON DIVISION**

BRETON L. MORGAN, M.D., INC. and
BRETON L. MORGAN, M.D.,

                    Plaintiffs,

v.                                                      CIVIL ACTION NO. 3:19-0406

ALEX M. AZAR, Secretary of Department
of Health and Human Services,

                    Defendant.

**MEMORANDUM OPINION AND ORDER**

Currently pending before the Court is a Motion for an Award of Attorney's Fees and Costs

filed by Plaintiffs Breton L. Morgan, M.D., Inc. and Breton L. Morgan. *Mot. for Fees*, ECF No. 23.

Defendant Alex M. Azar timely filed a Response in Opposition, *Resp. in Opp'n*, ECF No. 26, and

Plaintiffs did the same with their Reply, *Reply. Br.*, ECF No. 30. The issues have been fully briefed

and are ripe for resolution. For the reasons set forth below, the Court **GRANTS IN PART** and

**DENIES IN PART** the Motion.

## I. RELEVANT BACKGROUND

While a fuller picture of the factual setting of this case is available in this Court's

Memorandum Opinion and Order of January 16, 2020, certain essential facts are repeated here

where they are relevant. *See generally Morgan v. Azar*, No. 3:19-0406, 2020 WL 257376 (S.D.W.

Va. Jan. 16, 2020). The present motion stems from a years-long series of proceedings seeking the

reinstatement of Plaintiffs' Medicare billing privileges, which in turn stemmed from Dr. Morgan's

own felony conviction and Medicare exclusion in 2006. *Id.* at *1–3. Dr. Morgan reported the

exclusion that stemmed from his felony conviction on the CMS-855I form he used to reapply for Medicare billing privileges, though he did not detail the underlying facts that led to his exclusion. *Id.* at *3. The regional Medicare Administrative Contractor—Palmetto GBA—approved his application, but reversed its position in 2016 when it apparently discovered his felony conviction. *Id.* While Palmetto GBA based its initial exclusion on commission of a felony and failing to report the same, it later changed its position and argued that Morgan had supplied "false or misleading" information in his application. *Id.*

In the wake of Palmetto GBA's decision, Dr. Morgan proceeded through three layers of appeals. Each administrative decisionmaker ruled against him, reasoning that his failure to exclude explicit reference to his felony conviction constituted "false or misleading" information. *Id.* Following a final unfavorable agency decision by the Department of Health and Human Services Departmental Appeals Board ("DAB"), Plaintiffs appealed to this Court for review. *Id.* at *4. The Court determined that the question before it was "quite narrow: whether the ALJ's conclusion that Morgan's application was incomplete—and therefore 'false or misleading'—[was] based on substantial evidence, or represent[ed] an arbitrary and capricious decision in itself." *Id.* at *6.

The Court resolved the question in Plaintiffs' favor, reasoning that "[a] thorough review of Plaintiffs' application demonstrate[d] Morgan's repeated disclosure of his exclusion from Medicare, along with his reinstatement letter." *Id.* at *7. Consistent with this reasoning, the Court reversed Defendant's final decision and ordered the immediate reinstatement of Plaintiffs' Medicare enrollment and billing privileges. *Id.* The Court also ordered Defendant to "direct CMS to accept all billings for Plaintiffs' Medicare patients from December 7, 2016 to the present for processing and payment." *Id.* As a final matter, the Court held in abeyance "Plaintiffs' request for

costs and attorney's fees pending submission of an application for those fees and any other expenses." *Id.* It is to this open question that the Court now turns.

## II. LEGAL STANDARDS

"In the United States, parties are ordinarily required to bear their own attorney's fees—the prevailing party is not entitled to collect from the loser." *Buckhannon Bd. and Care Home, Inc. v. W. Va. Dep't of Health and Human Res.*, 532 U.S. 598, 602 (2001). Under this "American Rule," courts follow a "general practice of not awarding fees to a prevailing party absent explicit statutory authority." *Key Tronic Corp. v. United States*, 511 U.S. 809, 819 (1994). The Equal Access to Justice Act ("EAJA") is represents just such statutory authority, and mandates that courts award attorneys' fees and expenses to a prevailing party in an action by or against the United States "unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). Success on a claim for fees therefore requires:

> (1) that the claimant be a "prevailing party"; (2) that the Government's position was not "substantially justified"; (3) that no "special circumstances make an award unjust"; and, (4) pursuant to 28 U.S.C. § 2412(d)(1)(B), that any fee application be submitted to the court within 30 days of final judgment in the action and be supported by an itemized statement.

*INS v. Jean*, 496 U.S. 154, 158 (1990). "[T]he EAJA [also] authorizes fee awards for litigation before an agency that conducts adversary adjudications." *Pollgreen v. Morris,* 911 F.2d 527, 532 (11th Cir.1990) (internal citations omitted).

Though fees under the EAJA are capped at $125 per hour, the law also provides that a court may assess liability for attorney's fees and expenses against the United States "to the same extent that any other party would be liable under the common law." 28 U.S.C. § 2412(b). "Where the United States has litigated in bad faith, for example, it is subject to a common law attorney fee

award based upon prevailing market rates." *Sullivan v. Sullivan*, 958 F.2d 574, 577 n.8 (4th Cir. 1992). This "'bad faith' exception allows an award where the losing party has willfully disobeyed a court order or has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Id.* (quoting H.R. Rep. 1418, 96th Cong. 2d Sess. 8 (1980)). This is no easy showing to make, and requires actual "evidence that the government acted in bad faith." *Pet. of Duggan*, 734 F. Supp. 705, 707 (D.S.C. 1990). With this statutory framework in mind, the Court now undertakes a review of Plaintiffs' Motion.

### III. DISCUSSION

Plaintiffs contend that they are entitled to fees and expenses under the common law and the EAJA. Defendant opposes both arguments. The Court will consider Plaintiffs' contentions separately for the sake of analytical clarity.

### A. Common Law Fees and Expenses

Plaintiffs' first argument is that "Defendant has acted in a vexatious manner that would justify an award of the full amount of their reasonable attorney fees and costs," *Mot. for Fees*, at 4, which they claim totals $122,063.74,[1] *Reply Br.*, at 4. As noted *supra*, the EAJA authorizes courts to assess liability for attorney's fees and expenses against the United States "to the same extent that any other party would be liable under the common law." 28 U.S.C. § 2412(b). In order to actually meet this common law standard, however, a party must demonstrate that "the losing party has willfully disobeyed a court order or has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Sullivan*, 958 F.2d at 577 n.8.

---

[1] This figure is lower than the figure submitted in Plaintiffs' initial motion— $159,550.91—which they admit was an error resulting "from a change in billing software that occurred while this action was pending." *Reply Br.*, at 4.

Plaintiffs focus narrowly on the term "vexatiously," and draw heavily upon the Black Law Dictionary's definition of the term—namely, conduct that is "without reasonable or probable cause or excuse; harassing; annoying." *Vexatious*, Black's Law Dictionary (11th ed. 2019). In arguing that Defendant's behavior meets this threshold, Plaintiffs claim that the "nonsensical" position of the government was "without reasonable or probable cause" and therefore "vexatious." *Mot. for Fees*, at 5. As an initial matter, this truncated version of the Black's Law Dictionary definition omits the terms "harassing" and "annoying," both of which serve to specify the intended reach of "without reasonable or probable cause or excuse." More fundamentally, a review of other definitions of the term reveals a clear pattern at odds with Plaintiffs' broad interpretation. *Vexatious*, Oxford English Dictionary (3rd ed. 2017) ("Of legal action: instituted or taken without sufficient grounds, *purely to cause trouble or annoyance* to the defendant." (emphasis added)); *Vexatious*, Merriam-Webster Online Dictionary (accessed Apr. 3, 2020) ("[L]acking a sufficient ground and serving *only* to annoy or harass when viewed objectively (emphasis added)).

Whatever the precise definition one attaches to the term, it is clear from the record that the United States did not defend this action out of a desire to harass or annoy Plaintiffs. It is similarly clear that Defendant has not "willfully disobeyed a court order or . . . acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *See Sullivan*, 958 F.2d at 577 n.8. Plaintiffs point to no evidence beyond the fact that Defendant chose to litigate this case and to decline mediation to support their argument. While Plaintiffs may well have become annoyed at certain points throughout the course of this litigation, their annoyance is not attributable to any bad faith on the part of Defendant. As such, common-law fees and expenses are simply unavailable to Plaintiffs here.

**B. Statutory Fees and Expenses**

**1. Lack of Substantial Justification**

Plaintiffs alternatively request fees and costs as provided by 28 U.S.C. § 2412(d)(1)(A).

Success on a claim for fees under this provision requires:

> (1) that the claimant be a "prevailing party"; (2) that the Government's position was not "substantially justified"; (3) that no "special circumstances make an award unjust"; and, (4) pursuant to 28 U.S.C. § 2412(d)(1)(B), that any fee application be submitted to the court within 30 days of final judgment in the action and be supported by an itemized statement.

*Comm'r, INS*, 496 U.S.at 158. Here, Defendant "agrees that Plaintiffs prevailed before this court,

they timely filed a fee application, and no special circumstances exist that would make an award

unjust." *Resp. in Opp'n*, at 6. As such, the parties' dispute focuses on the second factor listed

above: whether the Government's position was "substantially justified."

The phrase "substantially justified" does not mean "'justified to a high degree,' but rather

'justified in substance or in the main'—that is, justified to a degree that could satisfy a reasonable

person." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). The mere fact that a Court agrees with

one party over another does not determine whether the losing party's position was substantially

justified. "Conceivably, the Government could take a position that is not substantially justified,

yet win; even more likely, it could take a position that is substantially justified, yet lose." *Id.* at 569.

This same thinking holds true in administrative appeals subject to deferential standards of review;

to that end, the Fourth Circuit Court of Appeals has "rejected the argument that a claimant is

entitled to attorney's fees under the EAJA simply because an ALJ's decision was not supported

by substantial evidence." *Strong v. Comm'r of Soc. Sec. Admin.*, 461 F. App'x 299, 300 (4th Cir.

2012) (per curiam) (citing *Pullen v. Bowen,* 820 F.2d 105, 108 (4th Cir.1987) ( "[T]he reversal of

an agency [decision] for lack of substantial evidence does not raise a presumption that the agency

was not substantially justified."), *abrogated on other grounds as recognized in Lively v. Bowen*, 858 F.2d 177, 180 (4th Cir.1988)). The test, instead, "is whether *arguably* there was substantial evidence to support the Secretary's position." *Anderson v. Heckler*, 756 F.2d 1011, 1013 (4th Cir. 1985). In this case, the Court thinks that there was not.

This is true for several reasons. First—and as Plaintiffs point out—the Court unequivocally determined that the ALJ's determination was "arbitrary and capricious, and certainly not based on substantial evidence." *Morgan*, 2020 WL 257376, at *6. It found Defendant's conclusions "irrational," and noted that if Dr. "Morgan's goal had been to mislead CMS and direct them away from his felony conviction, he did an astonishingly poor job of it." *Id.* The Court does not reverse administrative decision-making lightly, but the lack of any substantial evidence to support the Secretary's reasoning in this case was striking enough to warrant that action.

Second, Defendant's reliance on earlier cases from the DAB and other federal district courts does not support their position in *this* case. The crux of Plaintiffs' argument was not that CMS lacked the authority to revoke an application that was actually false or misleading under 42 C.F.R. § 424.535(a)(4). Rather, they argued that "[t]his is the only known case in which a Medicare provider has had their privileges revoked after answering the question about final adverse actions 'yes' and providing accurate supporting documentation." *Pl.'s Br.*, ECF No. 14, at 14. No prior case from the DAB or any other district court involved such an open and complete disclosure of accurate information. *See*, *e.g.*, *Foo v. Azar*, No. 18-00490-JAO-WRP, 420 F. Supp. 3d 1110 (D. Haw. Sept. 23, 2019) (anesthesiologist submitted private mailbox as practice location); *McGinty v. Azar*, No. 3:18-cv-359-S, 2019 WL 3044183 (N.D. Tex. May 15, 2019) (physical therapist did not report deferred adjudication).

Though "this Court well understands the deference owed to administrative agencies as they adjudicate the countless complex cases before them," *Morgan*, 2020 WL 257376, at *7, it cannot conclude either that Defendant's position was even arguably based on substantial evidence, *see Anderson*, 756 F.2d at 1013. As such, Plaintiffs are entitled to an award of fees and costs under the EAJA.

### 2. Fee Calculation

Having determined that an award of fees and expenses is justified in this case, the Court must consider the precise amount of that award. Under 28 U.S.C. § 2412(d)(2)(A), any "fees and other expenses" awarded to a prevailing party in an action against the United States must be "reasonable." The EAJA also provides that

> [t]he amount of fees awarded . . . shall be based upon prevailing market rates for the kind and quality of the services furnished, except that . . . attorney fees shall not be awarded in excess of $125 per hour *unless* the court determines that [1] an increase in the cost of living or [2] a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee.

*Id.* The Court will therefore undertake a three-step analysis, beginning with the reasonableness of Plaintiffs' claimed hours and then turning to the availability of a "special factor" or cost of living adjustment that would warrant an hourly rate above the statutory cap of $125 per hour.

### i. Reasonableness

"Once [a] district court determines that plaintiffs have met the threshold conditions for an award of fees and costs under the EAJA, the district court must undertake the 'task of determining what fee is reasonable.'" *Hyatt v. Barnhart*, 315 F.3d 239, 253 (4th Cir. 2002) (quoting *Jean*, 496 U.S. at 161)). At the outset, the Court notes that this process is complicated somewhat by the parties' relatively opaque and frequently erroneous calculations of what award is actually being claimed (to say nothing of the number of hours worked). For example, in their initial brief on

-8-

attorney's fees, Plaintiffs claimed that their total fees and costs amounted to $159,550.91, "of which $157,433.62 represents attorney's fees and $2,117.29 represents costs." *Mot. for Fees*, at 5. In its response, Defendant forcefully—and correctly—pointed out that this amount far exceeds the amounts listed on the invoices provided by Plaintiffs. *Resp. in Opp'n*, at 10; *see also Pls.' Ex. A*, ECF No. 23-2; *Pls.' Ex. B*, ECF No. 23-3; *Pls.' Ex. C*, ECF No. 23-4. Plaintiffs recognized their miscalculation, and revised their total down to $122,063.74. *Reply Br.*, at 30. Of course, even this figure is higher than Defendant's calculated total of $120,554.89. *See Resp. in Opp'n*, at 11. Their calculation of the number of hours worked also differs, with Plaintiffs claiming a total of 381.9 hours, *see Mot. for Fees*, at 8, and Defendant finding only 376.9 hours listed in Plaintiffs' invoices, *Def.'s Ex. A*, ECF No. 26-1, at 2. In light of these disagreements, the Court has undertaken a careful review of each invoice submitted by Plaintiff and made the following factual findings:

**Table 1. Total Hours, Fees, and Expenses as Provided by Plaintiffs' Invoices**

|  | **Hours** | **Fees** | **Costs** |
|---|---|---|---|
| **Jurca & Lashuk, LLC** | 220.6 hours | $62,389[2] | $2,050.32 |
| **Bradley Arant Boult Cummings LLP** | 146.30 hours | $52,561.50 | $66.97 |
| **Spilman Thomas & Battle, PLLC** | 4.90 hours | $1,470.50 | $596.10 |
| **TOTAL** | **371.8 hours** | **$116,421** | **$2,713.39** |

Allowing for total fees of $116,421 and total costs of $2,713.39, Plaintiffs' total claimed award is $119,134.40 for work that occurred over the course of 371.8 hours. District courts are

---

[2] For obvious reasons, the Court did not include a $37,077.33 transfer from counsel's previous billing system in reaching this figure. *See Pls.' Ex. A*, at 26. Instead, the Court conducted a line-by-line review of the invoices from counsel's previous billing system, which revealed a total of $29,186 spent on this matter, combined with $33,203 spent on this matter on counsel's new billing system.

"accorded 'substantial discretion in fixing the amount of an EAJA award,'" *Hyatt*, 315 F.3d at 254 (quoting *Jean*, 496 U.S. at 163), and the Court is inclined to exercise that discretion here in finding that the hourly fees and costs associated with Plaintiffs' appeals are reasonable.

The same cannot be said of the number of hours counsel has billed for this case. At this point in the Court's discussion, it is doubtless axiomatic that the EAJA permits a prevailing party to recover attorney's fees in a civil action against the United States. *See* 28 U.S.C. § 2412(d)(1)(A). Yet if relief were limited solely to civil actions, Plaintiffs would be unable to recover fees and costs for the substantial litigation that occurred at the administrative level. To remedy this shortcoming, the EAJA provides that a Court may award fees to a prevailing party in an action "for judicial review of an adversary adjudication, as defined in subsection (b)(1)(C) of section 504 of title 5, United States Code." 28 U.S.C. § 2412(d)(3). In turn, 5 U.S.C. § 504(b)(1)(C) defines "adversary adjudication" as one "under section 554 of this title in which the position of the United States is *represented by counsel or otherwise.*"[3] Here, the United States was not represented by counsel during proceedings "at the contractor level of review." *Resp. in Opp'n*, at 17. It follows that no "adversary adjudication" began until Plaintiffs filed their request for a hearing before an ALJ to appeal Palmetto GBA's revocation, which they did on August 13, 2016. *Id.* This first appeal was dismissed on November 21, 2016 after Palmetto GBA revised the basis for its initial determination, and did not begin again until Dr. Morgan filed a second appeal with an ALJ on May 28, 2017.[4] *Id.* It follows that any fees accrued outside these defined periods of adversary

---

[3] "Otherwise" is not a boundless catch-all term, and refers "to an individual who represents the position of the United States in a manner similar to that of counsel." *Pollgreen*, 911 F.2d at 533.

[4] The Government appears to believe that Plaintiffs did not file their second request for an ALJ hearing until July 6, 2017. *See Resp. in Opp'n*, at 17. This is partially true—"Breton L. Morgan, M.D., Inc." did not file an appeal until that date—but "Breton L. Morgan" the individual filed a request for a hearing on May 28, 2017. *See Admin. R.*, ECF No. 19, at 111. While the cases

adjudication—that is, time before August 13, 2016 and between November 22, 2016 and May 28, 2017—are not awardable under the EAJA. This decreases the hours billed by Jurca & Lashuk, LLC to 154.8, and the total number of hours billed to 306.8.

The Court is also troubled by the number of vague, overbroad, and apparently unrelated line items in counsel's invoices—specifically those of Attorney Jurca. Courts "have a special responsibility to ensure that taxpayers are required to reimburse prevailing parties for *only* those fees and expenses actually needed to achieve the favorable result," *Role Models Am., Inc.*, 353 F.3d at 975, and the Court takes this responsibility seriously here. As Defendant points out, various entries in Attorney Jurca's invoices involve corresponding with United States Senators, assisting with a reinstatement application, and disputing billing issues with federal agencies and hospitals. *Resp. in Opp'n*, at 18. "[E]xpenses of an attorney that are not incurred or expended solely or exclusively in connection with the *case before the court*, or which expenses the court finds to be unreasonable or unnecessary in the pending litigation, cannot be awarded under the EAJA," *Oliveira v. United States*, 827 F.2d 735, 744 (Fed. Cir. 1987) (emphasis added), and so the Court has undertaken a close review of each item on counsel's invoices. In addition to more obvious examples of vagueness—say, "miscellaneous issues relating to WV Medicaid"—the statements also reveal a pattern of combined block billing that makes it difficult to decipher how much time was actually expended on Plaintiffs' case.[5] This sort of "[l]umping and other types of inadequate

---

were later consolidated, this first date is when the Court finds that adversary adjudication commenced.

[5] For example, one 1.5 hour entry contains the following memorandum: "Telephone conference with Jenny of Sen. Capito's office regarding status; text exchange with Dr. Morgan regarding same; further conference with Jenny regarding denial; conference with Mr. Shaw regarding developments; and further conferences with Mr. Shaw and Dr. Morgan." *See Pls.' Ex. A*, at 9. Discerning what portion of this time was actually devoted to Dr. Morgan's case would be impossible.

documentation are thus a proper basis for reducing a fee award because they prevent an accurate determination of the reasonableness of the time expended in a case." *Guidry v. Clare*, 442 F. Supp. 2d. 282, 294 (E.D. Va. 2006).

The Court can accomplish such a reduction either "(i) by identifying and disallowing specific hours that are not adequately documented, or (ii) by reducing the overall fee award by a fixed percentage or amount based on the trial court's familiarity with the case, its complexity, and the counsel involved." *Id.* Here, counsel's frequently vague entries mean that the Court is left with no choice but to exercise its substantial discretion to further reduce the hours billed by Attorney Jurca by 10%. To be very clear, Attorney Jurca's performance in this case has been highly competent and these hourly reductions should not be interpreted as any reflection on the quality of his advocacy. Yet "the EAJA provides that attorneys for a prevailing party should be paid" only "'for all time reasonably expended on a matter,'" *Hyatt*, 315 F.3d at 254 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)), and the Court is not free to ignore that command even in view of capable lawyering. For the purposes of this analysis, then, the Court finds that hours submitted by Jurca & Lashuk, LLC should be reduced to 139.3,[6] for a new total of 290.5 hours.

### ii. Special Factors

The Court's next consideration is whether any "special factors" warrant a fee above the statutory ceiling of $125 per hour. Only one special factor is specifically enumerated in the EAJA—"the limited availability of qualified attorneys for the proceedings involved"—but other factors may support a higher fee as well. *See* 28 U.S.C. § 2412(d)(2)(A); *Pierce*, 487 U.S. at 573 (noting that the Court "need not specify" what other factors could justify higher fees under the

---

[6] This figure is rounded down from 139.32, which is the result of a 10% reduction in hours attributable to Jurca & Lashuk, LLC.

EAJA). For example, obtaining "exceptional results" for one's client may be sufficient to warrant a fee enhancement. *SUFI Network Servs., Inc. v. United States*, 128 Fed. Cl. 683, 699 (2016) (citing *Hensley*, 461 U.S. at 434)). Nevertheless, the United States Supreme Court has stressed that special factors must not be "of broad and general application." *Pierce*, 487 U.S. at 573. In particular, the "novelty and difficulty of issues," "the undesirability of the case," "the work and ability of counsel," and "the results obtained" do not qualify as special factors warranting an enhanced fee. *Id.*

In arguing that special factors justify a higher fee in this case, Plaintiffs advance essentially two arguments: first, that they have achieved "exceptional results," and second, that Defendants have caused an unreasonable delay in processing Plaintiffs' bills. Plaintiffs' first argument essentially centers on the fact that they prevailed in an appeal involving a deferential standard of review. Yet for the EAJA's fee limitation to have any meaning, "adjustments in the hourly ceiling should only be made if the lawyers in a case substantially exceed, in some measurable category, expected standards for attorneys handling litigation against the government under the EAJA." *Bunn v. Bowen*, 637 F. Supp. 464, 477 (E.D.N.C. 1986). Plaintiffs' attorneys have ably briefed, argued, and litigated this case, but merely succeeding in a "garden-variety administrative law matter" is insufficient to qualify as a special factor within the meaning of the EAJA. *Role Models Am., Inc. v. Brownlee*, 353 F.3d 962, 969 (D.C. Cir. 2004).

Plaintiffs' second argument—that the Government has not paid his outstanding Medicare bills for three years—is equally unavailing. As an initial matter, the Court notes that CMS is legally bound to withhold payment from suppliers whose billing privileges have been revoked. *See* 42 C.F.R. § 424.555(b) ("No payment may be made for otherwise Medicare covered items or services furnished to a Medicare beneficiary by a provider or supplier if the billing privileges of the provider

or supplier are deactivated, denied, or revoked."). It follows that characterizing Defendant's failure to pay Plaintiffs as a "delay" somewhat overstates the case. Indeed, Plaintiffs' reasoning would seem to suggest that—if it wishes to avoid a fee enhancement—the Government must continue paying suppliers whose credentials have been revoked until they have exhausted every possible appeal. Moreover, there is little support for the notion that normal "delay" itself is a special factor within the meaning of the EAJA. *See*, *e.g.*, *Perales v. Casillas*, 950 F.2d 1066, 1077 (5th Cir. 1992) (reasoning that "the normal delay attendant on litigation of a fee request can hardly be called a 'special factor'"). Those cases to recognize delay as a special factor have done so only in exceptional cases of prolonged delay. *See Okla. Aerotronics, Inc. v. United States*, 943 F.2d 1344, 1350 (D.C. Cir. 1991) (holding that an eight-year delay in processing a fee application because of court error was a special factor justifying an enhanced fee); *Wilkett v. I.C.C.*, 844 F.2d 867, 876 (D.C. Cir. 1988) (granting enhanced fee after five-year delay in processing fee application, but noting that "[t]he *normal* delay attendant on litigation of a fee request can hardly be called a '*special* factor'" (emphasis in original)). No such unusual delay is present in this case; while proceeding through several levels of administrative appeals is a time-consuming process, any attendant delay cannot be said to constitute anything exceptional. As such, the Court cannot discern any special factors that would warrant an award above the EAJA's statutory maximum hourly rate.

### iii. Cost of Living Adjustment

As a final matter, the Court considers whether Plaintiffs' attorneys are eligible for a cost-of-living adjustment under 28 U.S.C. § 2412(d)(2)(A). Such adjustments "are frequently given," *May v. Sullivan*, 936 F.2d 176, 177 (4th Cir. 1991), likely in recognition of the fact that the EAJA's fee cap has not been amended since March 1996, *see Johns v. Astrue*, No. 5:09CV17, 2009 WL

2761925, at *1 (N.D.W. Va. Aug. 28, 2009). The Court sees no reason to depart from this sound practice in the instant case.

To actually calculate a cost of living increase, the Court multiples the EAJA rate of $125 per hour by the Consumer Price Index for All Urban Consumers ("CPI-U") applicable during the year when the work was performed divided by 155.7, which was the CPI for March 1996 when the EAJA rate of $125 first became applicable. *See Peterson v. Astrue*, No. 1:04CV76, 2008 WL 183726, at *8 (N.D.W. Va. Jan. 18, 2008). This is in contrast to Plaintiffs' proposed process, which would apply the January 2020 CPI-U to all hours they have claimed in this case. Such a process "would result in a *de facto* award of pre-judgment interest, which would constitute an abuse of discretion." *Kerin v. United States Postal Serv.*, 218 F.3d 185, 194 (2d Cir. 2000). This case spans five years, so the Court will apply a cost of living adjustment to each firm and year as follows:

**Table 2. Cost of Living Adjustments[7]**

|  | **Jurca & Lashuk, LLC** | **Bradley Arant Boult Cummings LLP** | **Spilman Thomas & Battle, PLLC** |
|---|---|---|---|
| **2016 (CPI-U: 240)** | $6,242.77 | N/A | N/A |
| **2017 (CPI-U: 245.12)** | $4,835.10 | N/A | N/A |
| **2018 (CPI-U: 251.11)** | $2,721.56 | $28,768.32 | N/A |
| **2019 (CPI-U: 255.66)** | $10,473.93 | $738.90 | $783.75 |
| **2020 (CPI-U: 257.97)** | $3,411.01 | N/A | $103.56 |
| **EXPENSES** | $2,050.32 | $66.97 | $596.10 |
| **TOTAL** | **$29,734.69** | **$29,574.19** | **$1,483.41** |

---

[7] To calculate these figures, the Court has applied the previously-mentioned reductions in hours to the invoices provided by Jurca & Lashuk, LLC. The Court also notes that only one hourly rate in any firm's records—that attributed to Christina Dye-Hayes at Spilman, Thomas & Battle, PLLC—is under the $125 cap, and so the Court applied her hourly rate of $120 in its calculations.

Consistent with the above analysis, Defendant will be required to reimburse Plaintiffs' counsel in the total sum of $60,792.29, with $29,734.69 payable to Jurca & Lashuk, LLC, $29,574.19 payable to Bradley Arant Boult Cummings LLP, and $1,483.41 payable to Spilman Thomas & Battle, PLLC.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** the Motion for Attorney's Fees, ECF No. 23, in the amount of $60,792.29 and payable according to the schedule outlined in Table 2, but **DENIES IN PART** the Motion to the extent Plaintiffs seek a greater award.

The Court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to counsel of record and any unrepresented parties.

ENTER:        April 24, 2020

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE

-16-